IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM A. BRANDT, JR. not individually but solely in his as plan administrator of Equipment Acquisition Resources, Inc., <br><br>     Plaintiff,<br><br> v.<br><br>CHARTER AIRLINES, LLC,<br><br>     Defendant. | 14 C 5102<br><br>Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are the Proposed Findings of Fact and Conclusions of Law from the bankruptcy court with respect to this adversary proceeding. In the bankruptcy court, Defendant Charter Airlines and William A. Brandt Jr., Plan Administrator for the debtor, Equipment Acquisition Resources, Inc. ("EAR"), cross moved for summary judgment under Federal Rule of Bankruptcy Procedure 7056. The bankruptcy judge recommended that this Court deny the Plan Administrator's motion for summary judgment and grant Charter Airlines' motion for summary judgment. *See In re Equip. Acquisition Res.*, 511 B.R. 527 (Bankr. N.D. Ill. 2014). The Plan Administrator filed objections to both of these recommendations. For the following reasons, the Court adopts the bankruptcy court's Proposed Findings of Fact and Conclusions of Law with respect to the Plan Administrator's motion for summary judgment, but sustains the objection with respect to Charter Airlines' motion for summary judgment. The case is remanded to the bankruptcy court for a determination of the extent to which Charter Airlines gave value to the debtor.

## BACKGROUND

The underlying facts are not largely in dispute and were well stated by the bankruptcy court:

> EAR had been continuously insolvent since October of 2005. (Plan Administrator 7056–1 Statement at ¶ 9.) From 2007 until October 8, 2009, it engaged in a massive fraud whereby it misrepresented the value of equipment, sold it at artificially inflated prices, leased the equipment back from various lenders, and, in certain cases, pledged the same equipment multiple times to secure financing. (*Id.* at ¶ 8.) During this period of time, one or more of the officers, directors, and shareholders of EAR knew that EAR was engaged in this fraud, and EAR paid substantial amounts of money to its board of directors, officers, and others detailed below (*Id.*)
>
> Ms. Malone and Mr. Anstett were officers of EAR, and both resigned their positions on October 8, 2009. (*Id.* at ¶ 10.) Mr. Player was married to Ms. Malone, and he played an integral role in structuring and effectuating the transactions which constituted the fraud described above. (*Id.* at ¶ 11.) In addition, Mr. Player had the power, authority, and/or ability to sign checks on EAR's accounts. (*Id.*) EAR paid Mr. Player substantial sums throughout the four-year period prior to the petition date. (*Id.*)
>
> James Walker and his wife are the co-owners of Charter Airlines (Charter Airlines 7056–1 Statement at ¶ 2), a Nevada limited liability company. (Plan Administrator 7056–1 Statement at ¶ 3.) Mr. Walker has been the director of operations, chief pilot, and the captain on every of Charter's flights for the past forty years. (Charter Airlines 7056–1 Statement at ¶ 2.) The parties do not dispute that Charter Airlines was engaged to fly Mr. Player, Mr. Anstett, and Ms. Malone to various locations across the country. All of the chartered flights were initially charged to an American Express credit card in the name of EAR. (*Id.* at ¶ 5.) To save money and avoid credit card fees, Mr. Player then began paying Charter Airline's invoices by EAR company checks. (*Id.*)
>
> The following EAR checks were given to Charter Airlines for various flights taken by Mr. Player, Mr. Anstett, and Ms. Malone:
>
> > Check No. 906947 dated July 17, 2008 in the amount of $16,000
> > Check No. 1055 dated September 7, 2008 in the amount of $14,000
> > Check No. 907730 dated September 28, 2008 in the amount of $24,000
> > Check No. 1075 dated October 6, 2008 in the amount of $24,000
> > Check No. 1062 dated October 29, 2008 in the amount of $28,000
> > Check No. 908310 dated December 17, 2008 in the amount of $24,000
> > Check No. 1129 dated December 26, 2008 in the amount of $24,000

(Plan Administrator 7056–1 Statement at ¶ 12.) The aggregate amount of the payments within the two-year period prior to the petition date, October 23, 2007 to October 23, 2009, was $161,500.[1] (*Id.* at ¶ 14.)

Mr. Walker never asked and was never informed whether the chartered flights were booked for business or personal purposes. (Charter Airlines 7056–1 Statement at ¶ 6.) At the time the chartered flights were booked, Mr. Walker was not aware that EAR was insolvent or that EAR, Mr. Player, Mr. Anstett, and/or Ms. Malone were engaged in a fraudulent scheme. (*Id.* at ¶ 8.) The price Charter Airlines charged for each flight was the fair market value for a charter airline flight, taking into account the market value of fuel at the time. (*Id.* at ¶ 9.)

EAR filed its Chapter 11 bankruptcy case on October 23, 2009. On July 15, 2010, the Court approved EAR's plan of liquidation pursuant to which EAR executed the Plan Administrator agreement that named the Plan Administrator. The instant adversary proceeding was filed on October 17, 2011. In his one-count complaint, the Plan Administrator alleges that the above-referenced transfers were made for less than reasonably equivalent value during a time when EAR was insolvent and thus are avoidable fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) and recoverable under 11 U.S.C. § 550.

*See Equip. Acquisition Res.*, 511 B.R. at 533-34 (footnote in original).

The bankruptcy court recommended that this Court deny the Plan Administrator's motion for summary judgment, but grant Charter's motion. *See id.* at 531. In the bankruptcy judge's view, summary judgment in the Plan Administrator's favor was not appropriate because the bankruptcy court "would have to conduct a trial on the issue of whether EAR received reasonably equivalent value." *Id.* at 535. The bankruptcy court, however, did not believe that any factual disputes stood in the way of Charter's summary judgment motion. Charter was not aware of the Officers' fraudulent scheme or EAR's insolvency and there was no question that Charter actually operated the flights for which it received payment. Thus, the bankruptcy court urged this Court to find that Charter had demonstrated that it had taken the payment in good faith and for value, entitling it to the protection of § 584(c).

---

[1] The seven checks referenced above total $154,000 not $161,500. It is unclear to the Court how the parties have arrived at the $161,500 sum. For purposes of these motions, however, the Court need not determine the exact sum.

3

The Plan Administrator timely objected to the bankruptcy court's proposed findings of fact and conclusions of law. (Dkt. No. 1). The Plan Administrator argued that the evidence did not support a grant of summary judgment in favor of Charter because there was no evidence in the record that EAR received any value from the transaction. The Plan Administrator also argued that this Court should grant summary judgment in its favor because the bankruptcy court relied on inadmissible hearsay in finding that a question of fact existed as to whether EAR received reasonably equivalent value for its payments to Charter.

## STANDARD OF REVIEW

In noncore proceedings not directly related to matters arising under the Bankruptcy Code, a bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1). Review in this Court is de novo with respect to any portion of the findings of fact or conclusions of law to which specific written objection has been made. *See* Fed. R. Bankr. P. 9033(d); *see also Executive Benefits Agency v. Arkinson*, 134 S. Ct. 2165, 2173 (2014). The Court may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

## DISCUSSION

**A.      EAR is not entitled to summary judgment**

The bankruptcy judge recommended that the Court deny the Plan Administrator's motion for summary judgment because a dispute exists as to whether EAR received reasonably equivalent value from the transaction. The Bankruptcy Code allows a trustee to avoid a transfer if, among other factors not in dispute, the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(i). "Reasonably equivalent should be understood to mean not part payment but that the debtor received or will

receive value for the property that he transferred that is as close to true equivalence as circumstances permit." *1756 W. Lake Street LLC v. Am. Chartered Bank*, 787 F.3d 383, 387 (7th Cir. 2015). To determine whether a debtor has received reasonably equivalent value, a reviewing court must determine the value of what was transferred and compare that value to the value the debtor received. *See Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007). Whether reasonably equivalent value has been given is a question of fact. *Barber v. Golden Seed Co. Inc.*, 129 F.3d 382, 387 (7th Cir. 1997).

The Plan Administrator objects on the ground that the bankruptcy court relied on statements for which Charter Airlines did not lay the proper foundation and that constituted inadmissible hearsay in reaching the conclusion that a genuine dispute existed as to whether EAR received reasonably equivalent value from the transaction. Both evidentiary objections relate to a single statement in the affidavit of James Walker, Charter Airlines' Chief Pilot and Director of Operations. In his affidavit, Walker stated "Player was constantly talking on his cell phone for what appeared to be business purposes, discussing financing, loans, and acquisitions." (Walker Aff. ¶ 5). The affidavit does not disclose when or where Walker overheard Player's conversations. The objection is overruled.

The affidavit contains sufficient information to lay a foundation for Walker's personal knowledge and the relevance of the conversations. "[E]vidence offered to support or oppose summary judgment must be admissible at trial, and affidavits and declarations must be made with personal knowledge." *Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2012). The Court notes that "no rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that the evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 638 (7th Cir. 2001). The threshold question here is one of

temporal relevance: did the conversations take place at a time that would suggest the flights in question were business related? The bar for relevance is low. The evidence need only have "any tendency to make a fact more or less probable." Fed. R. Evid. 401. In evaluating Plan Administrator's motion for summary judgment, the Court must draw all reasonable inferences in Charter Airlines' favor. Walker was a pilot and executive at Charter Airlines. Walker was familiar with the adversary complaint in this case and the flights in question. Nothing in the record suggests that Walker, Charter Airlines, EAR, or Player had any relationship beyond the occasional provision of business travel. The Plan Administrator does not deny Walker has been the pilot on every Charter Airlines flight for the past 40 years. From these facts, it is reasonable to infer that the conversations took place on, just before, or just after, the Charter Airlines flights for which the Plan Administrator seeks recovery. In other words, the fact that Walker overheard Player's apparently business related conversations is relevant to the purpose of the flight and the value EAR received.

The passengers' statements are not hearsay because they are not admitted for the truth of the matter asserted. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 555 (7th Cir. 2014) (statement "was not a statement of fact being offered to prove the truth of any matter asserted, so it was not hearsay at all"). Walker's affidavit states that he overheard EAR executives making phone calls regarding acquisitions, financing, and other business topics. The statements were admitted to show that the passengers were engaged in business activities while in flight, not for the truth of the statements themselves. The statements on which the bankruptcy judge relied were admissible and the Plan Administrator's objection is overruled.

**B.     Charter Airlines is not entitled to summary judgment**

The bankruptcy court held that notwithstanding a question of fact as to whether EAR had received reasonably equivalent value in exchange for its payment to Charter Airlines, Charter Airlines was entitled to summary judgment based on its § 548(c) affirmative defense because it was undisputed that Charter Airlines had actually operated the flights, in other words that it had "given value." Section 548(c) states: "Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547[2] of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." The Plan Administrator objects to the bankruptcy court's construction of § 548(c), which found that the proper inquiry at this stage was solely whether Charter Airlines had given value, not whether EAR had received anything of value. The Plan Administrator does not object to the bankruptcy judge's finding of good faith on the part of Charter Airlines and the Court adopts the Proposed Findings of Fact and Conclusions of Law with respect to the finding that Charter Airlines entered into the transactions in good faith. The Court agrees with the Plan Administrator's construction of § 548(c) and sustains the objection.

The plain language of the Bankruptcy Code primarily drives the Court's construction. *See In re B.R. Brookfield Commons No. 1 LLC*, 735 F.3d 596, 589 (7th Cir. 2013). The plain language of § 548(c) suggests that its protection of transferees is not an all or nothing proposition. Good faith transferees are protected only "to the extent that such transferee or oblige gave value to the debtor in exchange for such transfer or obligation." § 548(c); *see also In re Veluchamy*, 524 B.R. 277, 308 (Bankr. N.D. Ill. 2014) ("§ 548(c) of the Code reduces a

---

[2] None of these sections is at issue here.

7

transferee's liability *by any value given by the transferee*") (emphasis added); *In re Am. Hous. Found.*, 785 F.3d 143, 163 (5th Cir. 2015). The final clause of § 548(c) asks not whether the transferee gave value to any party, but the *extent to which* the transferee gave value *to the debtor*. A construction of § 548(c) that completely protect transferees who have given unquantified value to unidentified sources would render that final portion of the statute superfluous. *See Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (quotation marks and citation omitted). The determination of value received "is largely a question of fact." *In re Am. Hous. Found.*, 758 F.3d at 163. (quotation marks and citation omitted).

A genuine dispute as to the extent to which Charter Airlines gave value to EAR in operating the relevant flights exists for the same reasons that there is a genuine dispute as to whether EAR received a reasonably equivalent value. The Plan Administrator's affidavit states that the flights in question had no business purpose and EAR received no value. Walker's affidavit states otherwise. The dispute is material; if the plan administrator is correct that EAR did not receive a reasonably equivalent value, then EAR will be successful in its avoidance of the transaction and the protection of § 548(c) will be unavailable to Charter Airlines. *See In re Roti*, 271 B.R. 281, 299 (Bankr. N.D. Ill. 2002) (inability to establish reasonably equivalent value under § 548(a) is grounds for denial of § 548(c) protection). If EAR received some, but less than reasonably equivalent value, § 548(c) will determine the extent to which Charter Airlines is protected. On remand, the bankruptcy court should determine the extent to which Charter Airlines gave value *to EAR* because Charter Airlines is protected only "to the extent that [it] gave value to the debtor." § 548(c).

## CONCLUSION

The Plan Administrator's objections to the bankruptcy court's Proposed Findings of Fact and Conclusions of Law are sustained in part and overruled in part. The case is remanded for the bankruptcy court for further proceedings not inconsistent with this opinion.

```
                             _____
                             Virgir
                             United States District Court Judge
                             Northern District of Illinois
```

Date: August 12, 2015